FILED

2016 Oct-13  PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KEITH AVERY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | 2:14-cv-02301-LSC |
| DEMARCUS DAVIS, *et al.*, | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

MEMORANDUM OF OPINION

Before the Court is Defendants', the City of Birmingham ("the City") and Birmingham Police Officer Demarcus Davis ("Officer Davis"), Motion for Summary Judgment. (Doc. 13.) Plaintiff, Keith Avery ("Avery"), brought this case alleging civil rights violations under 42 U.S.C. § 1983 and comparable state-law claims. For the reasons stated below, Defendants' motion is due to be granted in part and denied in part.

I.   BACKGROUND

On November 24, 2012, Avery attended a party at a YMCA in Birmingham where fights broke out and Birmingham police officers were called to restore order. (Avery Dep. at 30-31.) After the police arrived and asked the party guests to leave, Avery went across the street to the

Walmart parking lot, where other party attendees were "tearing up" the store. (*Id.* at 33, 38.) Officer Davis arrived at the YMCA after the fights had been subdued but while the building was still being cleared of partiers. (Davis Dep. at 29-31.) Officer Davis and other officers then heard shots ring out, and drove in the direction of the sound towards the back of Walmart where Avery and his friends were located. (*Id.* at 33-34.) While other officers dealt with the shooting suspects, Officer Davis drove around to the front of the Walmart in response to the store's request to help clear out the vandalizing teenagers. (*Id.* at 35-36.) The store had been damaged so thoroughly that staff had to clear out all the teenagers and lock the doors for the night to prevent further destruction. (*Id.* at 40, Avery Dep. at 38-39.)

Meanwhile, Avery had decided to "just wait" in the parking lot to see if he could catch a ride home. (Avery Dep. at 37.) Officer Davis then turned his car around and parked in front of the Walmart with his blue lights flashing, directly facing two groups of teenagers who were gathered in the parking lot. (Davis Dep. 43-44, Avery Dep. at 53.) Avery was in one of the groups, and he stated that though the parking lot was poorly lit, he was standing under a light "so people could see [him]." (Avery Dep. at 40-41.) Before long, more fighting broke out, this time in

the Walmart parking lot. (*Id.* at 41.) According to Avery, a group of six or seven young men approached him and his two friends and a fight started. (*Id.* at 41-43.) Avery claims that though his friends were involved in the fight, he was not fighting. (Avery Dep. at 56.) Officer Davis, however, claims he saw Avery "exchanging punches" with one of the other men. (Davis Dep. at 53-54.)

The young men in the parking lot then began to run again, including Avery (Avery Dep. at 49.)  According to Avery, the men started running because shots rang out. However, Davis disputes this, claiming that they started running because they saw police officers heading towards them. Avery admits that he was running behind one of the young men on the opposing side of the fight, and conceded that it could have appeared to Officer Davis that he was chasing that young man. (*Id.* at 57-58.) Officer Davis claims that he responded to the situation by getting in between Avery and the young man that he appeared to be chasing. (*Id.*) With Officer Davis in front of him, Avery claims that he continued to run toward the other individual. According to Avery, he did not see Officer Davis and had too much adrenaline to stop. (*Id.* at 59.) Officer Davis alleges that Avery looked him in the eye and squared up into an offensive position. (Davis Dep. at 54.) Regardless, it is undisputed that Avery did

not stop running until Officer Davis punched him in the jaw. (Avery Dep. at 60, Davis Dep. at 54.)

Avery fell to the ground and briefly lost consciousness as a result of the punch, at which point Officer Davis attempted to arrest him. (Avery Dep. at 60.) When Avery regained consciousness, he tried to get back up, but was quickly slammed back onto the ground by Officer Davis, who placed a knee on his back to keep him down and while he handcuffed him. (*Id.* at 60-63.) Officer Davis arrested Avery for an affray, and thereafter transported him to the Birmingham Police Department East Precinct. (*Id.* at 70-71, Davis Dep. at Ex. 3.) According to Avery, after he was arrested, he told Officer Davis that he had a broken jaw, but Officer Davis just responded by "cussing [him] out." (Avery Dep. at 69.) After arriving at the precinct, Officer Davis took Avery to Cooper Green Hospital for a medical examination. (*Id.* at 76.) However, Avery refused care and was thereafter placed in the juvenile detention. (*Id.* at 78.) Avery later had to have surgery to repair his broken jaw and claims that he still suffers from "aches, lock jaw," problems sleeping, and an inability to chew food for long periods of time. (*Id.* at104-05, 110.)

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a "genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The trial judge should not weigh the evidence but must simply determine whether there are any genuine issues that should be resolved at trial. *Id.* at 249.

In considering a motion for summary judgment, trial courts must give deference to the non moving party by "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citations omitted). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id.* Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of

the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

III.  DISCUSSION

Avery brought this action under § 1983 against Officer Davis and the City, asserting that his Fourth Amendment right to be free from unreasonable searches and seizures  was violated by Officer Davis's actions, which he alleges amount to false imprisonment, false arrest, malicious prosecution, harassment, and assault and battery. He also brought identical Alabama state laws claims against Officer Davis and the City.[1] The Court recognizes that the defendants filed a Motion to Strike Plaintiff's Brief (Doc. 20) based on Plaintiff's failure to list statements of fact in separately numbered paragraphs. Plaintiff has indeed failed to comply with the Uniform Initial Order's Requirements for statements of fact. However, the Court will deny Defendant's Motion to Strike, because striking the brief, while technically permissible, would not be in the interests of justice. Therefore, the Court will address the merits of the case as presented in the briefs.

A. Claims against Officer Davis

---

[1] Avery never specifies—in his complaint (Doc. 1) nor his "Brief in Denial and Response to Defendants' Motion for Summary Judgment" (Docs. 14 & 15)—which Alabama state laws he is bringing his claims under. Therefore, the Court will only analyze state law immunity, which has been fully briefed by the parties.

i. § 1983 and Qualified Immunity

Qualified immunity "offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012).  In order for qualified immunity to be applicable, however, Officer Davis must establish that he was acting within the scope of his discretionary authority, which he can do by showing that his acts "are of the type that fell within [his] job responsibilities." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). Police officers clearly act within their discretionary authority when they arrest someone, and Avery did not dispute that Officer Davis was acting within his discretionary authority leading up to Avery being punched and then arrested. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

Therefore, the burden shifts to Avery to overcome the defense of qualified immunity. *Bates v. Harvey*, 518 F.3d 1233, 1242 (11th Cir. 2008). In order to do so, Avery must show that (1) the officer's conduct violated a constitutional right and (2) the allegedly violated right was clearly established. *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009). Hre, Avery claims that Officer Davis violated his constitutional

rights by using excessive force in the course of the arrest.  These claims are based on allegations that Officer Davis (1) hit Avery, (2) threw Avery on the ground, and (3) placed his knee on Avery's back and handcuffed him.

In excessive force cases, "qualified immunity applies unless application of the standard would inevitably lead every reasonable officer in [the position of the defendant officer] to conclude the force was unlawful." *Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000) (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1550 (11th Cir. 1993), *modified by* 14 F.3d 583 (11th Cir. 1994)). This determination "turns on a number of factors" and "must be judged on a case-by-case basis." *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997) (quoting *Post*, 7 F.3d at 1559). This abundance of case law makes it clear that the right to be free from excessive force during an arrest is clearly established.

Here, Avery conceded that Officer Davis could have been under the impression that Avery was chasing the other young man when he stepped in between them. (Avery Dep. at 57-58.) However, Avery and Officer Davis dispute what happened next. According to Avery, he never noticed Officer Davis in front of him, and therefore did not stop running until he felt the hit. Conversely, Officer Davis claims that "Mr. Avery got in an

offensive position, squared up against me." (Davis Dep. at 54.) Officer
Davis also disputes Avery's assertion that he never saw him, claiming that
Avery looked him in the eyes. (Davis Dep. at 62.) Officer Davis does not
contend that he called out to Avery to stop or anything else before
striking him in the jaw. Taking the facts in the light most favorable to the
nonmoving party, a jury could find that every reasonable officer in
Officer Davis's position would conclude that the force was unlawful and
that, therefore, Officer Davis used excessive force when he hit Avery.
Therefore, there is a dispute of material fact about whether or not
Officer Davis used excessive force in arresting Avery. Therefore, summary
judgment for Avery's § 1983 claims against Office Davis is due to be
denied.

ii.  State Law Claims

Federal qualified immunity only protects individuals from suits
based on federal rights and therefore does not protect Officer Davis from
Avery's state-law claims. *Harbert Int'l, Inc. v. James*, 157 F.3d 1271,
1286 (11th Cir. 1998). However, Officer Davis asserts that he is protected
by Alabama state-agent immunity. Under Alabama law, police officers
"have immunity from tort liability arising out of [their] conduct in
performance of any discretionary function within the line and scope of

[their] law enforcement duties." Ala. Code § 6-5-338 (1975). A police officer is immune from liability when "the conduct made the basis of the claim against the agent is based upon the agent's . . . exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons." *Ex parte Kennedy*, 992 So.2d 1276, 1280 (Ala. 2008).

Further, Alabama law also allows a police officer to "us[e] that degree of physical force which he reasonably believes to be necessary" when effectuating an arrest. Ala. Code, § 13A-3-27 (1975). A police officer "may be held liable only if more force is used than is necessary to effectuate the arrest." *Franklin v. City of Huntsville*, 670 So.2d 848, 852 (Ala. 1995). As discussed above, if the facts are taken in the light most favorable to the nonmoving party, there is no indication that hitting Avery was necessary in the circumstances. Officer Davis does not claim that he asked Avery to stop before hitting him, and Avery denies that he got into a fighting position. Therefore, a jury could find that Officer Davis used more force than necessary in restraining Avery and effectuating the arrest. Summary judgment on Avery's state law claims against Officer Davis is due to be denied.

B. Claims against the City

i. § 1983

Avery's "Brief in Denial and Response to Defendants' Motion for Summary Judgment" only offers arguments and evidence as to Officer Davis's liability. (Doc. 14 & 15.) While the brief mentions the City repeatedly, all of the arguments contained in the brief are about qualified immunity for government employees sued in their individual capacity. The City can be sued under § 1983 if the "action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by [the City's] officers." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). Alternatively, the City can be sued if the practice is pursuant to a government "custom", even if the custom has not received official approval. *Id.* Here, Avery has failed to allege that Officer Davis acted according to an official policy of the city or even an unofficial "custom" of police officers. He has simply contested the propriety of granting qualified immunity to Officer Davis for his individual actions. Because "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned," Avery's claims under § 1983 against the City are deemed abandoned. *Resolution Trust Corp. v.*

*Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  Summary judgment for these claims is due to be granted.

### ii.  State-Law Claims

Avery does not mention the City in his section on state-law claims in his brief. He simply makes arguments about Officer Davis's liability for state-law claims. Avery's state-law claims against the City are therefore deemed abandoned, and summary judgment for the City on Avery's state law claims is due to be granted. *See id.*

## IV.   CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is due to be GRANTED in part and DENIED in part. Summary judgment as to Avery's claims against Officer Davis is denied. Summary judgment in favor of the City of Birmingham as to Avery's claims against the City is granted. A separate order consistent with this opinion will be entered. Further, Defendant's motion to Strike Plaintiff's Brief (Doc. 20) is DENIED.

DONE and ORDERED this 13th day of October 2016.

_____

L. Scott Coogler
United States District Judge

186291